UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


MELISSA K. CASTEEL                                                    PLAINTIFF


v.                                              CIVIL ACTION NO. 3:12CV-136-S


MICHAEL J. ASTRUE,
Commissioner of Social Security                                       DEFENDANT


**<u>MEMORANDUM OPINION</u>**


This matter is before the court for consideration of the Findings of Fact, Conclusions of Law, and Recommendation of the United States Magistrate Judge addressing plaintiff Melissa K. Casteel's challenges to the findings of Administrative Law Judge George A. Jacobs and the final decision of the Commissioner of Social Security denying her application for disability insurance benefits and supplemental security income.

Casteel was 34 years old on March 10, 2006, the disability onset date alleged in this application.[1]  She has not engaged in substantial gainful activity since that date.  ALJ Jacobs found that she suffered from the severe impairments of degenerative disk disease of the thoracic, lumbar, and cervical spine, occipital neuralgia/headaches, glioma/brain tumor, ventral hernia, depression, and anxiety.  He concluded that she does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix

---

[1]Casteel received a previous adverse decision on a claim for benefits on March 9, 2006.  ALJ Jacobs considered Casteel's subsequent disability claim on an unadjudicated period involving the same titles of the Social Security Act as the prior claim. Therefore, ALJ Jacobs was bound to adopt the findings of the prior final decision of ALJ Pickett unless new and material evidence related to the prior findings was presented.  *Drummond v. Comm'r of Soc. Sec.,* 126 F.3d 837 (6th Cir. 1997); *Acquiescence Ruling*, 98-4(6).  ALJ Jacobs found that Casteel's musculoskeletal pain and headaches had increased from that found previously, and rendered an independent decision concerning Casteel's residual functional capacity.

1.  He concluded that Casteel has the residual functional capacity to perform sedentary work with limitations and is not disabled.

Casteel appealed the ALJ's decision.  The Appeals Council considered her objections, as set out in the Representative Brief filed by her counsel.  The Appeals Council upheld the decision of the ALJ.  Casteel then filed this action seeking judicial review.

The magistrate judge's report carefully considered Casteel's claims of error and the ALJ's decision which was affirmed by the Commissioner of Social Security.  The claimant bears the burden at all times to prove that she is disabled from working.  42 U.S.C. § 423(d)(5)(A).  The Commissioner's decision must be affirmed absent a finding that the ALJ failed to apply the correct legal standards or made findings of fact which are unsupported by substantial evidence in the record. *White v. Commissioner of Social Security*, 572 F.3d 272, 281 (6th Cir. 2009).

Casteel challenged the ALJ's findings 4, 5, 9, 10, and 11.  The magistrate judge found no error in findings 4 and 5, and found Casteel's additional challenges to findings 9, 10, and 11 moot.

The ALJ's findings 4 and 5 are as follows:

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.6967(a), except no pushing or pulling with the lower extremities, no overhead reaching, occasional balancing, stooping, kneeling, crouching, crawling, climbing ramps and stairs, and never climbing ladders, ropes or scaffolds, and the claimant needs a sit/stand option with at least 30 minutes in a position.  The claimant should avoid workplace hazards including working around unprotected heights and dangerous moving machinery and the claimant should avoid work around fumes, odors, dust, gases, and poor ventilation.  The claimant can perform simple repetitive tasks with no production rate pace work but rather goal

directed work with no more than occasional contact with co-workers and supervisors and no contact with the public.

At step 3 of the five-step sequential evaluation process (paragraph 4 above), the ALJ found that Casteel's impairments did not meet or medically equal one of the listed impairments, such that she would be found disabled without consideration of her age, education, or work experience. Casteel contends that she was given a Global Assessment of Functioning ("GAF") score of 48 by both consultative examiner Christopher Catt, Psy.D. and Kathleen Powers, M.A. that should have been considered by the ALJ as significant and relevant in the step 3 determination.

The Global Assessment of Functioning is a subjective diagnostic tool which assists in assessing an individual's overall level of psychological, social, and occupational functioning. It is a "subjective rating" rather than "raw medical data," and the Commissioner of Social Security has "indicated that [GAF] scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *Kennedy v. Astrue*, No. 06-6582, 247 Fed.Appx. 761, 766, 2007 WL 2669153 (6th Cir. Sept. 7, 2007)(*citing, DeBoard v. Comm'r.* 211 Fed.Appx. 411 (6th Cir. 2006)(*quoting Wind v. Barnhart*, 133 Fed.Appx., 684, 691-92 n. 5 (11th Cir. 2005)(*quoting* 65 Fed.Reg. 50746, 50764-65 (Aug. 21, 2000)).

The magistrate judge found that the ALJ relied on substantial evidence in determining that Casteel did not have an impairment or combination of impairments which met or equaled one of the listed impairments. This court agrees. The ALJ noted, in part, that:

> The claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of

decompensation, each of extended duration.  A marked limitation means more than moderate but less than extreme.  Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has mild restriction.  The claimant is able to attend to grooming needs, drive, cook, does some household chores, and is the primary care giver for her 9-year-old-child.

In social functioning, the claimant has moderate difficulties.  The claimant has good social support from some of her family members and she indicated that she has friends visit once or twice a month.

With regard to concentration, persistence or pace, the claimant has moderate difficulties.  The claimant can manage bills and watches television and can follow a story line.  She has adequate cognitive skills and was described as alert and oriented when she was consultatively examined (Exhibit B10F).

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

ALJ Decision, p. 7.

Casteel's only objection to the ALJ's step 3 finding is her contention that the GAF score is "significant to the extent that it elucidates an individual's underlying mental issues," and that Casteel's score of 48 evidences that her "severe anxiety and depression are pervasive and their severity and impact is substantiated."  DN 17, Obj. to Rpt., p. 4, *citing Oliver v. Comm'r*, 415 Fed.Appx. 681, 684 (6th Cir. Mar. 17, 2011).  *Oliver* did not involve a step 3 determination.  In any event, the ALJ relied upon substantial evidence in the record running counter to the conclusion that Casteel's GAF score substantiated impairments meeting or exceeding listing 12.04.  The ALJ noted in assessing Casteel's residual functional capacity that Casteel's GAF score of 48 was internally

inconsistent with other findings in Dr. Catt's medical report and the GAF score should therefore be discounted.

Casteel urges that the magistrate judge erred in affirming the ALJ's decision to discount the impact of her brain tumor which has grown since originally detected six years ago. Her treating physician, Dr. Todd Vitaz, opined that she has "chronic" and "debilitating" headaches and that she is "probably going to be unable to work." (AR 661-86). Casteel contends that her "headaches are debilitating and unremitting and caused by a brain anomaly..." DN 17, Obj. to Rpt., p.3. She urges that her complaints of pain are consistent with the medical record, and that "there is no physician who has doubted her veracity or who has opined that her headaches are anything other than legitimate manifestations of physical illness." *Id.*

Casteel notes that the ALJ applied the correct Sixth Circuit standard set out in *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986) for assessing subjective complaints such as pain:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

Casteel contends that the ALJ erred in discounting the opinion of her treating physician regarding her chronic and debilitating headaches. She argues that in 2009, there were objective findings that the tumor grew. She urges that "whether her pain is caused by the occipital neuralgia or the growing tumor, she has unabating headaches," and takes "Methadone, a strong pain medication with life threatening side effects," for pain management. DN 17, Obj. to Rpt., p. 3. Casteel urges that "objective findings in 2009" regarding the growth of the tumor and her treating physician's opinion that she is "probably going to be unable to work" supersede earlier observations and clinical

findings. She also contends that the ALJ erred in finding that she is able to perform a limited range of sedentary work. She contends that the objective medical findings confirm that she is experiencing lumbar disc bulging and foraminal stenosis. She states that she is unable to sit for longer than 20 to 30 minutes at a time and can stand no longer than 10 to 15 minutes at a time which would preclude her from performing the limited range of sedentary work identified by the vocational expert.

The ALJ considered Casteel's complaints of pain in the context of the record as a whole and found her statements concerning the intensity, persistence and limiting effects as not entirely credible. The ALJ stated, in part, that

> In September 2008 the claimant underwent an evaluation with Dr. Nazar, a neurologist who also that [sic] the claimant's minimal cervical disc findings would not likely produce the degree of neck pain alleged and that the glioma was not likely related to the claimant's headaches. Dr. Nazar cited that he did not have a good explanation for the claimant's headaches and there was no structural abnormality to account for them (Exhibit B16F, p. 1). The claimant has no motor or neurological deficits on examination. As of March 2009, there was evidence of mild partial dehydration and mild lumbar spine bulging of L1 through L5 (Exhibit B28F, pg. 1). Imaging showed that the glioma remained stable until June 2009, when a brain MRI showed slow but progressive increased size of the glioma but no abnormal enhancement was noted (Exhibit B24F, pg. 1). When the claimant was seen by Dr. Finizio, July 2009, the claimant reported that her headaches had not changed...In September 2009, Dr. Vitale noted the biopsy was non-diagnostic with neural-glial tissue but not suspicious for tumor. Further treatment was not recommended and pain management was recommended. Dr. Vitaz noted the claimant can drive if she is not taking narcotic medication and he further noted that the claimant probably cannot work because her headaches appear to be debilitating (Exhibit B23F). Subsequent pain management treatment notes show that the claimant is maintained on Methadone and Percocet and is doing relatively well. Although the claimant testified that she has medication side effects, the treatment notes however show that the claimant denies medication side effects. She has no sensory deficits and normal motor power. The undersigned does not assign weight to Dr. Vitaz' assessment that the claimant cannot work because of her headaches. The record shows that the claimant's occipital neuralgia headaches are controlled with nerve blocks...Dr. Vitaz' statement is cursory and based on the severity of symptoms alleged by the claimant. Dr. Finizio and Dr. Nasr [sic] did not think the glioma was the source of headaches

and minimal spine imaging findings do not account for the headache pain or any of the claimant's other musculoskeletal complaints...As noted above, there is no objective medical evidence to corroborate that the claimant has significant musculoskeletal impairment to limit sitting, walking, or standing...After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The undersigned also notes the claimant has a poor work history possibly indicating poor motivation for work. The claimant is also able to engage in a wide range of activities of daily living that is not consistent with allegations of disability.

ALJ Decision, pp. 9-10.

The ALJ found that

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in CFR 404.1567(a) and 416.967(a) except no pushing or pulling with the lower extremities, no overhead reaching, occasional balancing, stooping, kneeling, crouching, crawling, climbing ramps and stairs, and never climbing ladders, ropes or scaffolds and the claimant needs a sit/stand option with at least 30 minutes in a position. The claimant should avoid workplace hazards including working around unprotected heights and dangerous moving machinery and the claimant should avoid work around fumes, odors, dust, gases, and poor ventilation. The claimant can perform simple repetitive tasks with no production rate pace work but rather goal directed work with no more than occasional contact with co-workers and supervisors and no contact with the public.

Id. at p. 8.

The ALJ found did not find any medical evidence confirming the severity of the pain claimed by Casteel, nor was there evidence that her medical condition was of such severity that it could reasonably be expected to give rise to such a degree of pain. He found that her statements concerning her pain management were inconsistent and did not square with her activities of daily living. He discounted Vitaz' opinion concerning her ability to work, as it was based upon Casteel's

- 7 -

self-report of debilitating headaches.  The magistrate judge found no error in the ALJ's RFC determination based upon the record as a whole.  The court agrees.

The ALJ took into account the possibility of medication side effects by restricting her from hazardous work.  He also took into account some degree of back pain by requiring a 30-minute sit/stand option and incorporating various limitations on movement.  He limited her to goal directed work with simple repetitive tasks, limited contact with co-workers and supervisors, and no contact with the public.  The vocational expert's testimony was uncontradicted that Casteel could perform a significant number of jobs in the national economy with the designated limitations.

We conclude that the magistrate judge's findings of fact, conclusions of law, and recommendation that we affirm the final decision of the Commissioner should be accepted and adopted in their entirety.  A separate order will be entered this date in accordance with this opinion.

**IT IS SO ORDERED.**

November 2, 2012

**Charles R. Simpson III, Judge**
**United States District Court**

- 8 -